IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

      v.             :        CRIMINAL NO. 24-111-2

ALPHONSE SHINE         :

### GOVERNMENT'S SENTENCING MEMORANDUM

In February 2024, defendant Alphonse Shine and his co-defendant robbed four commercial businesses at gunpoint. In each of the four robberies, the defendant or his co-defendant held a store clerk at gunpoint and stole cash from the register. The defendant engaged in a violent crime spree that put many hardworking individuals in fear for their lives. For these reasons, the defendant should face a significant sentence of incarceration.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court

---

[1]  Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.   BACKGROUND

On April 1, 2025, the defendant pled guilty to robbery which affects interstate commerce, in violation of 18 U.S.C. § 1951, and using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). During his plea colloquy, the defendant admitted that he robbed a Dollar General at 4342 Frankford Avenue in Philadelphia at gunpoint. He was apprehended on scene in possession of a loaded firearm and with the proceeds of the robbery in his pocket.  At the plea hearing, the defendant further stipulated to three additional gunpoint robberies as relevant conduct.

### A.  Summary of the Offense Conduct

The government requests that the Court adopt the factual representation of this case set forth in the Presentence Investigation Report (PSR).

On February 24, 2024, at approximately 9:55 p.m., the defendant and his co-defendant entered the Dollar General at 4342 Frankford Avenue in Philadelphia. Two employees were working at the front register. The defendant pointed the gun at a young female store clerk and

demanded she open the register. The defendant said, "you're being robbed; give me everything in your drawer." The victim opened the register, and the defendant took all of the cash and put it in his pockets.

Another employee was in the aisles of the store when the robbery occurred. She contacted her boyfriend and alerted him to call 9-1-1, which he did. Shortly thereafter, Philadelphia Police Officers arrived on scene and entered through the front door. The defendant and his co-defendant attempted to flee from the back doors, but the doors were locked. Officers ordered the defendants to drop their weapons and placed them under arrest. Officers recovered $865 in United States currency, a ski mask, and a Glock 19 Gen 5 9mm caliber firearm which was loaded with 19 live rounds of ammunition. PSR ¶¶ 14 – 18.

### B. Stipulated Relevant Conduct

1. On February 3, 2024, at approximately 2:49 p.m., the defendant and the same co-defendant entered the Dollar General at 4342 Frankford Avenue in Philadelphia. The defendants approached two store employees at gunpoint. The defendant led one employee to the register while his co-defendant led another employee to the safe. The defendants stole approximately $2,200 in United States currency from the store. PSR ¶ 19.

2. On February 15, 2024, the defendant and the same co-defendant approached the Kailey Mini Mart business at 2001 West Spencer Avenue in Philadelphia. One defendant stood by the door while the other pointed a firearm at the employees and demanded cash. The defendants stole approximately $1,000 from the register. PSR ¶ 20.

3. On February 24, 2024, the defendant and the same co-defendant approached the Kailey Mini Mart business at 2001 West Spencer Avenue in Philadelphia. One defendant stood by the door with a firearm while the other pointed a firearm at the employees and demanded

cash. The defendants stole approximately $500 of United States currency from the register and fled the store. PSR ¶ 21.

## II.        SENTENCING CALCULATION

### A.        Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is lifetime imprisonment, a mandatory 7 years' imprisonment consecutive to any other sentence of imprisonment, 5 years of supervised release, a $500,000 fine, and a $200 special assessment.

### B.        Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range as follows: A violation of 18 U.S.C. § 1951 is covered by USSG § 2B3.1. The base offense level is 20. PSR ¶ 31. During the robbery, the defendant led one of the victims to the front registers at gunpoint. Six levels are added because a firearm was otherwise used during the robbery, pursuant to USSG § 2B3.1(b)(2)(B); however, this enhancement cannot be applied because the defendant was separately convicted of a violation of 18 U.S.C. § 924(c). *See* USSG § 2K2.4, Application Note 4. PSR ¶ 32. During the robbery, the co-defendant forced one of the victims to the back of the store while looking for a manager. He then forced the manager, another victim, to the front of the store to open the safe. Four levels are added pursuant to USSG § 2B3.1(b)(4)A), because two individuals were abducted to facilitate the offense. PSR ¶ 33. Therefore, the total adjusted offense level for Count One in the indictment, the robbery of the Dollar General on February 24, 2024, is 24. PSR ¶ 37.

The defendant accepted responsibility for the gunpoint robbery of the same Dollar General on February 3, 2024. The base offense level is 20. PSR ¶ 38. During the robbery, the defendants led one of the victims to the front registers at gunpoint. Six levels are added because a

firearm was otherwise used during the robbery, pursuant to USSG § 2B3.1(b)(2)(B). PSR ¶ 39. The adjusted offense level is 26. PSR ¶ 43.

The defendant accepted responsibility for the gunpoint robbery of a Kailey Mini Mart at 2001 West Spencer Avenue on February 15, 2024. The base offense level is 20. PSR ¶ 44. During the robbery, the defendants led one of the victims to the front registers at gunpoint. Six levels are added because a firearm was otherwise used during the robbery, pursuant to USSG § 2B3.1(b)(2)(B). PSR ¶ 45. The adjusted offense level is 26. PSR ¶ 49.

Finally, the defendant accepted responsibility for the gunpoint robbery of the same Kailey Mini Mart at 2001 West Spencer Avenue on February 24, 2024. The base offense level is 20. PSR ¶ 50. During the robbery, the defendants led one of the victims to the front registers at gunpoint. Six levels are added because a firearm was otherwise used during the robbery, pursuant to USSG § 2B3.1(b)(2)(B). PSR ¶ 51. The adjusted offense level is 26. PSR ¶ 55.

Units are assigned pursuant to USSG § 3D1.4(a), (b), and (c). One unit is assigned to the count group with the highest offense level, and one additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious. The highest adjusted offense level is 26 and is assigned one unit. The other three robberies are equally serious or from 1 to 4 levels less serious, totaling 4 units. The offense level is increased pursuant to the number of units assigned by the amount indicated in the table at USSG § 3D1.4. Therefore, the combined adjusted offense level is 30. PSR ¶ 59.

The defendant has clearly demonstrated acceptance of responsibility for the offense and is therefore the offense level is decreased by two levels. USSG § 3E1.1(a). PSR ¶ 61. The defendant assisted authorities by timely notifying authorities of the intention to enter a guilty

plea. Accordingly, the offense level is decreased by one additional level. USSG § 3E1.1(b). PSR ¶ 62.

The total offense level is 27. ¶ PSR 63.

The defendant has no prior criminal convictions, and his criminal history score is zero. Accordingly, the defendant is a criminal history category I. PSR ¶¶ 66 – 67.

Based upon a total offense level of 27 and a criminal history category of I, the guideline imprisonment range is 70 months to 87 months. Count 2 requires an 84-month term of imprisonment, which shall be imposed consecutively to any other term of imprisonment, pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). Therefore, the effective guideline range is 154 to 171 months. USSG §§ 5G1.2(a) and 2K2.4(b). PSR ¶ 104.

## III.   ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

1.  **The nature and characteristics of the offense and history and characteristics of the defendant.**

The defendant is a 26-year-old man who spent most of his life in Rochester, New York. The defendant has a strong relationship with his mother and grandmother. Although the defendant did not have a relationship with his biological father, the defendant reported that he had strong male influence in his life by his mother's paramour who treated him "like his own son." PSR ¶ 75.

The defendant graduated from high school in 2017. He went on to pursue a post-secondary program and graduated from Universal Technical Institute in Exton, Pennsylvania, which brought him to the greater Philadelphia region. The defendant retained many jobs and his lengthy employment history is outlined thoroughly in the PSR. ¶¶ 92 – 96. In 2023, just before he committed these robberies, the defendant earned over $54,000 from Exton Tire Company. PSR ¶ 92.

Prior to the commission of these crimes, the defendant had no prior criminal history. In fact, the defendant lawfully purchased the firearm that was used to commit these robberies and was recovered by police. PSR ¶ 90.

Despite this solid upbringing and opportunities to pursue lawful employment, in February 2024, the defendant chose to engage in a violent crime spree. In the PSR, the defendant attributed his conduct to an act of desperation because he needed money. PSR ¶ 24. The defendant's actions were caused by greed rather than necessity. He should be sentenced accordingly.

2. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The violent nature of the defendant's conduct cannot be overstated. In each of these four robberies, one or two firearms were brandished and shoved at innocent victims. In an interview following the February 24 robbery, one victim, a young adult female, told police that while the defendant pointed the gun to her, all she could think about was whether she would see her children again. The defendant's actions have undoubtedly left permanent emotional scars on his victims. The sentence imposed must account for the harm caused by the defendant's actions. A sentence to a significant term of incarceration would reflect the serious nature of these offenses.

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

3. **The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

While the defendant now expresses remorse for his conduct, it was not until he

was stopped by law enforcement that he showed empathy for his victims. The defendant's actions in this case warrant a sentence of a significant period of incarceration to prevent him, and others like him, from committing violent crimes against others.

### 4. The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). However, the defendant would benefit from drug treatment while incarcerated.

### 5. Restitution

The government is seeking restitution in the amount of $4,465. $2,965 should be paid to the Dollar General and $1,500 to Kailey Mini Mart.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of a substantial sentence of incarceration. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

The government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. However, our point is that a district court must consider the guideline range, *see* § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, as explained in detail earlier, there are no other 3553(a) factors in this particular case which militate against imposition of a sentence other than one of a significant period of incarceration.

## IV.    CONCLUSION

For all of the foregoing reasons and the circumstances outlined in the sealed supplement,

the government respectfully requests a sentence of significant incarceration.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Amanda McCool*
AMANDA McCOOL
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:


Jesse Smith, Esq.
Jesse_Smith@fd.org



/s Amanda McCool
AMANDA McCOOL
Assistant United States Attorney


DATED:  January 13, 2026.